**DAVIS | MILES**
ATTORNEYS AT LAW

999 East Playa del Norte Drive, Suite 510
Tempe, AZ 85288
Telephone: (480) 733-6800
Fax: (480) 733-3748
efile.dockets@davismiles.com
Taylor Barlow, CA State Bar No. 342455
David W. Williams, AZ State Bar No. 022764
Pro Hac Admission Pending
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| FELIX TROILO, an individual, and GARY TROILO, an individual, | CASE NO. 8:24-cv-1789 |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| EDMUND FRANK KELLY and JANE DOE KELLY, husband and wife, KELLY PNEUMATICS, INC., a Nevada corporation, | |
| Defendants. | |

Plaintiffs Felix Troilo and Gary Troilo (together "Plaintiffs"), through their undersigned counsel, hereby submit the following as their Complaint against Defendants:

**PARTIES, JURISDICTION AND VENUE**

1.  Plaintiff Felix (Phil) Troilo ("Phil") is a resident of Maricopa County, Arizona.

2. Plaintiff Gary Troilo ("Gary") is a resident of Pinal County, Arizona. Gary is the trustee of the Felix T. Troilo Survivors Trust, and is authorized to act on behalf of the Trust and to assert claims on behalf of the Trust.

3. Defendants Edmund Frank Kelly ("Mr. Kelly") and Jane Doe Kelly are husband and wife, and residents of Orange County, California. All actions set forth herein were done on behalf of and for the benefit of the Defendants' marital community.

4. Kelly Pneumatics, Inc. is a Nevada corporation with its primary place of business in Orange County, California.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is properly before this Court pursuant to 28 U.S.C. § 1397 because the actions giving rise to this Complaint occurred within this Judicial District.

## ALLEGATIONS COMMON TO ALL COUNTS

7. The Felix T. Troilo Survivors Trust and Mr. Kelly are the sole shareholders in Kelly Pneumatics, Inc. ("KPI" or the "Company"). The Felix T. Troilo Survivors Trust's shares in KPI were originally held by Phil.

8. KPI was incorporated in the State of Nevada on May 1, 2003, and does business in the State of California, but has directed its business activities across the United States, including Arizona.

9. KPI specializes in the design and manufacture of proportional valves, pressure regulators, and pneumatic control products which are used for customized parts for various industries including medical, alternative energy test equipment, semi-conductor equipment, and gas analyzers.

10. At the time of KPI's formation, Mr. Kelly was the original sole owner.

2

11.     In 2004, Mr. Kelly approached Phil about making a $40,000.00 loan to KPI. After making his initial $40,000.00 loan to Mr. Kelly and KPI, Mr. Kelly requested additional financing from Phil, and Phil and Mr. Kelly agreed that Phil would provide additional financing in exchange for a certain number of shares in KPI valued at $5.00 per share and each share would have compound annual growth rate of 20 percent.

12.     Between 2004 and 2012, Phil provided financing of approximately $2,916,500.00 in exchange for the transfer of 583,300 shares of KPI stock, which provided Phil with an ownership interest in KPI of 85.37 percent by 2012.

13.     In 2004, Phil and Mr. Kelly agreed to a framework by which Mr. Kelly could repurchase the stock sold to Phil at the price of $5.00 per share with a guaranteed minimum rate of return on each share.

14.     In 2004, Phil and Mr. Kelly also agreed as part of the initial transfer of shares in KPI to Phil that Mr. Kelly would retain a certain number of his shares based upon his prior contribution and development of a patent that he owned and later transferred to KPI.  Mr. Kelly retained 100,000 shares of KPI stock due to his representation that he invested and transferred certain technology and proprietary processes to KPI that was worth approximately $500,000.00.

15.     After the 2004 transfer of initial shares to Phil, Mr. Kelly also developed other intellectual property and pneumatic control designs that KPI uses as part of its operations. All of this intellectual property was developed for the benefit of and owned by KPI.

16.     After the transfer of the initial patent by Mr. Kelly to KPI, all of KPI's intellectual property was assigned and exclusively licensed to KPI and developed by Mr. Kelly for the benefit of KPI, and he retained no ownership interest in any such intellectual property, and he was specifically allowed to retain certain shares in KPI based on his express

representation that any prior intellectual property had been transferred to and now owned by KPI.

17. On or about December 17, 2012, Phil and Mr. Kelly were the only owners of KPI, and entered into a written stock repurchase agreement dated December 17, 2012.

18. Under the 2012 Agreement, Phil agreed to sell certain stock to Mr. Kelly at a $5.00 per share price plus a 10 percent compounded rate of return that was adjusted based upon the amount of time that Phil held the stock. Phil and Mr. Kelly originally agreed that Mr. Kelly could repurchase shares at a $5.00 per share price plus a 20 percent compounded rate of return that was adjusted based upon the amount of time that Phil held the stock. Under the subsequent 2012 Agreement Phil agreed to change the 20 percent to 10 percent.

19. The 2012 Agreement did not specify specific terms for how often Mr. Kelly was required to repurchase stock from Phil, and any specific obligation by Phil to sell back shares to Mr. Kelly at any particular time. The 2012 Agreement is more akin to a "right of first refusal" such that if Phil ever elects to sell any shares Mr. Kelly has the first right to purchase any shares that Phil has decided to sell.

20. On or about November 20, 2015, Mr. Kelly and Mr. Phil Troilo negotiated and entered into an updated stock repurchase agreement, which provided that Mr. Phil Troilo would continue to sell certain shares of KPI stock back to Mr. Kelly for the stock value price of $5.00 plus an adjusted 10 percent rate of return. This agreement also stipulated that Mr. Kelly could only buy back up to fifty percent of the stock.

21. Despite the 2015 Agreement and the 2012 Agreement providing that stock could be repurchased, neither agreement provided a specific schedule for the repurchase of stock, a minimum amount of stock required for repurchase, or provided any security interest to protect the Trust in the event that Mr. Kelly defaulted on any further purchases of stock.

22. Over time, Phil transferred his stock ownership into the Felix T. Troilo Survivors Trust ("the Trust"). Phil was the original trustee of the Felix Troilo Revocable Trust (the "Trust"), and his son Gary is the current trustee of the Trust.

23. The Trust is now the sole holder of all of Phil's shares in KPI.

24. Over the years, Mr. Kelly has repeatedly traveled to Arizona and met with Phil at his personal residence and discussed KPI business, including stock repurchases by Mr. Kelly and overall operation of KPI. Mr. Kelly met with Phil and Gary personally at Phil's personal residence on March 12, 2018, January 17, 2023 and April 7, 2023.

25. Mr. Kelly met with Phil both in his personal capacity as a shareholder of KPI and as a member of the Board of Directors of KPI, and specifically directed his contacts to the State of Arizona by meeting at Phil's personal residence and engaging in business discussions regarding KPI in Arizona.

26. Since Troilo and now the Trust have owned the majority of shares in KPI, Phil and the Trust have exercised majority control and ownership of the Company, although Mr. Kelly has repeatedly ignored the Trust's majority ownership interest and made decisions in regard to the operation of KPI without input from Phil, Gary or the Trust, and without legal authority for his actions.

27. Phil contends the current Board is still composed of three directors, Phil, Ed, and Gary and has not changed. Because the Trust is the majority shareholder in KPI, the Trust controls two seats on the Board of Directors, which are held by Phil and Gary, and Mr. Kelly controls the other seat on the Board of Directors of KPI.

28. Despite being the majority shareholders, Phil, Gary and the Trust have had no exclusive role or say in the day-to-day operations of the Company and have been excluded by Mr. Kelly from the operation of KPI.

29. Despite being a minority shareholder, Mr. Kelly has functioned as the de facto sole owner of the Company and operated the Company to the exclusion of Phil, Gary and the Trust.

30. Although the Trust is considered the majority shareholder, Mr. Kelly has also designated a separate person as the Treasurer and Chief Financial Officer of the Company who reports directly to Mr. Kelly.

31. KPI also has no by-laws; thus, all decisions of the Company are governed by the Nevada Business Corporation Act because KPI is a Nevada corporation.

32. Nevada Revised Statute § 78.330 requires that an election of the board of directors to occur at each annual meeting of the shareholders. Even though Nevada law requires an annual shareholder meeting to elect members of the Board of Directors, no annual shareholder meeting has occurred.

33. Mr. Kelly has also repeatedly taken actions without the authority of, or input from the Board of Directors, and has repeatedly excluded Phil, Gary and the Trust from decisions involving many functional operations of the Company.

34. Mr. Kelly also controls and makes all of the financial decisions for the Company often without input from the Board of Directors, or Phil, Gary or the Trust.

35. More recently, Mr. Kelly has also been issuing payments to himself from KPI. Since 2022, Mr. Kelly has been making the payments to himself and his sons without the authorization or approval of the Board of Directors or the Troilos and has refused and failed to issue similar payments to the Trust or the Troilos. These payments are disguised distributions of profit to Mr. Kelly without making similar distributions to the Trust as the other shareholder in KPI. Mr. Kelly claims that these payments issued by the Company to him are for alleged intellectual property rights, although Mr. Kelly has never provided any evidence that he is the owner of any of the trade secrets or intellectual property currently

owned by KPI. Instead, all intellectual property used by KPI is exclusively owned by the Company, and Mr. Kelly has no separate ownership interest in such intellectual property

36. Mr. Kelly has no legal authority to transfer any of KPI's intellectual property or assets to himself or to pay himself any compensation for any assets of KPI.

37. Mr. Kelly's continued payment of Company funds to himself is a breach of his fiduciary duties, both to KPI and to the Troilos as fellow shareholders.

38. Because Mr. Kelly is functioning as the President and Chief Executive Officer, he owes a fiduciary duty both to KPI and a fiduciary duty to the Phil and the Trust (as fellow shareholders) to ensure that all of Mr. Kelly's actions and decisions are made in the best interest of all shareholders and not for his own personal benefit.

39. Mr. Kelly's continued payment of monies to himself for intellectual property already owned by KPI is a misappropriation and/or embezzlement of Company funds, and or disguised payments of profits from KPI to himself at the exclusion the other shareholders.

40. Mr. Kelly's actions in making continued payments to himself and excluding Phil and the Trust from decisions of the Company is also a breach of his fiduciary duty to KPI and Phil and the Trust.

41. Upon information and belief, Mr. Kelly has also transferred or assigned certain intellectual property rights of KPI (including certain patents) to himself or other corporate entities that Mr. Kelly owns.

42. There is also a present dispute among the shareholders as to whether the Trust and Phil are still considered the majority shareholders of KPI.

43. As of November 18, 2022, Phil and the Trust owned approximately 465,140 shares in KPI and Mr. Kelly owned 297,255 shares in KPI.

44.   On November 18, 2022, Mr. Kelly informed Gary and Phil that Mr. Kelly was sending them payment for the purchase of 82,323 shares of KPI stock, which would give Mr. Kelly an ownership interest of 50.1 percent in KPI.

45.   Phil and Gary rejected the payment from Mr. Kelly and are not currently willing to sell any more shares to Mr. Kelly due to Mr. Kelly's ongoing misconduct and self-dealing.

46.   On May 24, 2023, the Board of Directors held a meeting to address various issues, including the current percentage of ownership of KPI stock. During the May 24, 2023 Meeting, the Board of Directors voted and affirmed Phil and the Trust owned approximately 465,140 shares in KPI and Mr. Kelly owned 297,255 shares in KPI.

47.   On April 11, 2024, Mr. Kelly sent an email directly to Phil and Gary indicating that he was purchasing additional shares of the Trust's KPI stock and that a payment in the amount of $300,000.00 was being mailed to Phil's personal residence in Arizona.

48.   In the email dated April 11, 2024, Mr. Kelly wrote the following:

> Hi Phil and Gary,
>
> The KPI team, under my leadership, continues to achieve both strong sales and profits. Revenue for Q4 of 2023 was $2.62MM with a profit before taxes of $.93MM. This was the most profitable quarter in KPI's history. KPI continued with strong results going into Q1 for 2024. Revenue stayed strong at 2.14MM. We expect profit to be above .60MM. The combined profit before taxes for the last 2 quarters will exceed 1.5MM!
>
> Given KPI's strong results and the desire to move forward with KPI's business, we are resuming the repurchase and repayment schedule initially provided to Phil June 30, 2022. Specifically, a check for $300,000 was sent out today, completing the 15th overall buyback of KPI shares, pursuant to the Agreement of KPI to Repurchase Stock dated November 20, 2015. The aforementioned $300,000 is for the purchase of 15,800 shares to put my stock ownership of KPI to 50.92%. Below is a table that

> explains the stock repurchases and also the calculation of stockholders percentage of ownership: [TABLE GRAPH OMITTED]
>
> I am sure you can understand the elation I feel as I continue the recovery of the company I founded and grew from the ground up. Also, we still have the Troilo Trust's check sent November 18, 2022 for the 14th stock buyback that was consummated that same day. We remain ready, willing and able to send your check back to you (or, given the amount of time that has passed, cut a replacement check). Recall that you held this check over two and a half months, until February 8, 2023, at which time you returned the check to me and baselessly refused to abide by the agreement to repurchase stock that would allow me to recover the company I founded and led to profitability. It is also worth mentioning that you anticipatorily refused four additional payments totaling $1.7 million to be paid in 2023 (including the 15th repurchase that this message pertains to) and, therefore, we did not include any additional interest in today's buyback.
>
> The check for $300,000 mentioned above has been mailed via FedEx (tracking number: 775905805074)
>
> In addition to this, an action by written consent has been attached for your review.

49. In essence, in his email of April 11, 2024, Mr. Kelly claims that he now is a majority shareholder and controlling interest holder of KPI.

50. The email also contained two attachments. The first attachment is documented entitled, "Action by Written Consent of a Majority of the Shareholders of Kelly Pneumatics, Inc." In the "written consent," Mr. Kelly claims that he has the authority as the "majority shareholder" of KPI to remove Phil and Gary from the Board of Directors of KPI without their prior notice or consent.

51. The second email attachment is a photograph of a "FedEx" labeled package with Phil Troilo's mailing address purportedly with the $300,000 payment for the forced acquisition of shares from the Trust.

52. Gary did in fact receive a package at his Arizona address from Mr. Kelly a few days after the April 11 email was sent. To date, Gary and Phil have not accepted the payment and have not agreed that Mr. Kelly has the right or ability to unilaterally force a sale of the KPI shares owned by Trust.

53. To date, the Troilos have not deposited or negotiated any payment from Mr. Kelly for the repurchase of any additional shares, and the Trust maintains that it has retained all of its current shares and majority interest in KPI.

54. Mr. Kelly's attempt to remove the Troilos from the Board of Directors failed to comply with Nevada law, and Mr. Kelly's attempt to remove the Troilos from Board of Directors is null and void.

55. The only language in KPI's governing documents that speaks to designation, removal and replacement of Directors is in Article V of KPI's Articles of Incorporation, which provides, in relevant part, that the initial Director shall serve until the first annual meeting of the stockholders or until such Director's successor(s) have been elected and qualified and that the number of Directors may be increased or decreased by amendment of the Corporation's Bylaws.

56. Because KPI does not have any Bylaws, the Nevada Business Corporation Act Chapter 78, dictates the requirements for designation, removal and replacement of Directors.

57. Nev. Rev. Stat. § 78.330(1) provides that unless elected pursuant to Nev. Rev. Stat. § 78.320, or unless the Articles of Incorporation or Bylaws require more than a plurality of votes cast, directors must be elected at the annual meeting of the stockholders by a plurality

of the votes cast at the election, and otherwise directors may be elected at any special meeting of the stockholder called and held for that purpose.

58. No election of the directors at an annual stockholders meeting for KPI has occurred, and no special meeting of the KPI stockholders has been called for the purpose of removal or replacement of any directors.

59. Mr. Kelly's attempt to remove the Troilos from the Board of Directors through a "written consent" was legally improper because Nev. Rev. Stat. § 78.320 does not permit such action by the stockholders without a meeting (i.e. written consent) where there is a dispute as to the ability of a majority of the stockholders to exercise majority control.

60. Further, Nev Rev. Stat. § 78.335(1) provides that the Troilos can only be removed as Directors of KPI by vote of stockholders representing not less than two-thirds of the voting power of the issued and outstanding stock entitled to vote.

61. As of April 11, 2024, Mr. Kelly did not own two-thirds of the outstanding KPI stock and thus lacked the authority to remove the Troilos from the KPI Board of Directors.

### COUNT ONE
### (Breach of Fiduciary Duty as to Defendant Kelly)

62. Plaintiffs reallege and fully incorporate herein by reference all prior allegations set forth in the preceding paragraphs of the Complaint.

63. As set forth in the proceeding paragraphs, Mr. Kelly is exercising de facto control over KPI despite the fact that Phil and the Trust own a majority of the outstanding shares in KPI.

64. Because Mr. Kelly is exercising de facto control over the day-to-day operations of KPI, Mr. Kelly owes a fiduciary duty to the Plaintiffs, as shareholders, to avoid self-interested transactions and act at all times in the best interest of all shareholders and KPI.

65. As set forth in the proceeding paragraphs, Mr. Kelly has breached his fiduciary duties owed to the Plaintiffs by engaging in self-dealing transactions and misappropriating assets of KPI.

66. As a result of Mr. Kelly's breach of his fiduciary duty to Plaintiffs, Plaintiffs have proximately sustained damages in an amount to be determined at trial.

67. Mr. Kelly's actions as described above demonstrate that such actions were intentional, wanton, and reckless and showed ill will and demonstrated a reckless indifference and disregard for the rights of and owed to Plaintiffs and that such actions were outrageous and malicious so as to entitle Plaintiffs to an award of punitive damages against Mr. Kelly.

## COUNT TWO
### (Declaratory Relief as to all Defendants)

68. Plaintiffs reallege and fully incorporate herein by reference all prior allegations set forth in the preceding paragraphs of the Complaint.

69. As set forth above, there is an actual and justiciable controversy between the parties with respect to (1) the conditions under which Phil and the Trust are required to sell certain shares to Mr. Kelly and whether Mr. Kelly acquired 82,323 shares of KPI stock in November of 2022 and April of 2024; (2) whether the Board of Directors is responsible for the day-to-day operations of KPI and that Mr. Kelly is responsible to act only at the direction of the Board of Directors; and (3) whether Mr. Kelly was legally entitled to remove the Troilos from the Board of Directors in April of 2024.

70. Plaintiffs maintain that they are not required to sell specific shares to Mr. Kelly without agreement of the conditions under which such share will be purchased and have retained shares until such an agreement is mutually approved and finalized.

71. Plaintiffs also maintain that Mr. Kelly has no independent authority to act on behalf of KPI, and that he is only allowed to take action on behalf of KPI subject to the authority and direction of the Board of Directors.

72. Plaintiffs also maintain that Mr. Kelly's attempt to remove the Troilos from the KIP Board of Directors in April of 2024 was not proper under Nevada law.

73. Plaintiffs are entitled to declaratory judgment pursuant to the provisions of 28 U.S. Code § 2201, *et. seq.,* declaring that (1) Phil and the Trust are not required to sell any specific shares in KPI to Mr. Kelly and that they have retained their majority interest in KPI; (2) Mr. Kelly has no independent authority to act on behalf of KPI, and that he is only allowed to take action on behalf of KPI subject to the authority and direction of the Board of Directors; and (3) the Troilos still sit on the Board of Directors and that Mr. Kelly's attempt to remove the Troilos from the Board of Directors did not comply with Nevada law.

74. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties.

## COUNT THREE
**(Appointment of a Receiver as to Defendant Kelly Pneumatics, Inc.)**

75. Plaintiffs reallege and fully incorporate herein by reference all prior allegations set forth in the preceding paragraphs of the Complaint.

76. Plaintiffs seek the appointment of a receiver for KPI pursuant to Nev. Rev. Stat. § 78-347 and Fed. R. Civ. P. 66.

77. As indicated in the earlier paragraphs, Plaintiffs seek to have Mr. Kelly be restrained from removing, secreting, encumbering, or otherwise disposing of the property or monies of KPI to the injury of Plaintiffs, pending any hearing on an application for appointment of a receiver based on the facts alleged herein.

78. Absent appointment of a Receiver, and based upon the allegations set forth above, the assets of KPI and the value of the Plaintiffs' shares in KPI will be significantly devalued and irreparably harmed by the conduct of Mr. Kelly.

79. Mr. Kelly has improperly seized control of the day-to-day operations of KPI and has used that control to operate KPI outside of the authority of KPI's Board of Directors and for Mr. Kelly's own self-interest.

80. As a result, a Receiver for KPI is necessary and proper pursuant to Nev. Rev. Stat. § 78-347 to protect and preserve the property and/or the rights of the Plaintiffs as shareholders in KPI and to ensure for conversion of KPI's assets does not occur.

81. Unless a Receiver for KPI is appointed, the Plaintiffs will suffer irreparable harm from Mr. Kelly's ongoing breaches and misconduct.

82. No other adequate remedy is given by law for the protection and preservation of KPI, KPI's assets and the interests of the Plaintiffs in KPI.

83. Irreparable injury is being suffered by the Plaintiffs and KPI because Mr. Kelly continues to unilaterally operate KPI outside of the authority of the Board of Directors and to his own personal benefit and to the exclusion of the Plaintiffs as the majority shareholders. A vote of the Board of Directors to restrain Mr. Kelly is insufficient because Mr. Kelly is operating KPI outside of the authority of a valid Board of Director's authority and the Plaintiffs, as shareholders, have not other adequate remedy at law to cease further actions by Mr. Kelly.

84. The Plaintiffs have made a written demand upon Mr. Kelly to cease and desist the actions described herein, and Mr. Kelly has ignored that demand.

## COUNT FOUR
**(Injunctive Relief against All Defendants)**

85. Plaintiffs reallege and fully incorporate herein by reference all prior allegations set forth in the preceding paragraphs of the Complaint.

86. Plaintiffs have no plain, speedy, or adequate remedy at law to protect themselves from Mr. Kelly's actions alleged herein, including, but not limited to the payment of monies to himself and operating KPI outside of the authority of the Board of Directors.

87. Plaintiffs will continue to suffer irreparable injury unless and until Mr. Kelly is restrained and enjoined from further actions as described herein including (1) continuing to manage the day-to-day activities of KPI outside of the authority of the Board of Directors; and (2) paying himself monies that have not been approved by the Board of Directors.

88. Pursuant to applicable law, the Plaintiffs are entitled to recover all attorneys' fees incurred in bringing this action as this dispute arises out of the Repurchase Agreements entered into between the Parties.

89. Pursuant to Rule 38, Fed. R. Civ. P., Plaintiffs request a trial by jury on all counts set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

A. For an award of compensatory, general, and special damages, and other damages in an amount to be determined at trial;

B. For an award of punitive damages and treble damages in an amount to be determined at trial;

C. For a declaratory judgment requiring as outlined above.

D. All reasonable attorneys' fees and costs incurred in prosecuting this action pursuant to Ariz. Rev. Stat. § 12-341.01.

E.    For post-judgment interest on all applicable amounts, at the highest legal rate; and

F.    For such other and further relief as the Court deems just and appropriate.

DATED this 14th day of August, 2024.

**DAVIS MILES, PLLC**

By: /s/Taylor Barlow
David W. Williams
Taylor Barlow
999 East Playa del Norte Drive, Suite 510
Tempe, AZ 85288
*Attorneys for Plaintiffs*